1

2

3

4

5

6          UNITED STATES DISTRICT COURT

7          EASTERN DISTRICT OF WASHINGTON

8    GREGORIO LUNA LUNA,
                                        NO:  4:19-CV-5122-TOR
9                      Petitioner,
                                        ORDER DENYING PETITION FOR
10        v.                            WRIT OF HABEAS CORPUS

11   MIKE OBENLAND,

12                     Respondent.

13        BEFORE THE COURT is the Petition for Writ of Habeas Corpus Under 28

14   U.S.C. § 2254.  ECF Nos. 1, 11.  Petitioner, a prisoner at the Monroe Correctional

15   Complex, is proceeding *pro se.*  Respondent is represented by John J. Samson.

16   Respondent has answered the Petition and filed relevant portions of the state court

17   record.  ECF Nos. 16, 17.  Petitioner filed a reply.  ECF No. 20.  The Court has

18   reviewed the record and files herein, the completed briefing and is fully informed.

19   For the reasons discussed below, Gregorio Luna Luna's Petition for Writ of

20   Habeas Corpus is **denied**.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 1

# BACKGROUND

At a jury trial, Petitioner Gregorio Luna Luna was convicted of aggravated first degree murder and was then sentenced to life imprisonment without the possibility of parole. *See* ECF Nos. 16 at 2-3; 17-1 at 2-10, Exh. 1. Before trial, "the prosecutor offered to agree to a sentence of 420-months in exchange for Luna Luna pleading guilty [to murder in the first degree] by the date of the omnibus hearing." ECF No. 16 at 2. At that time, the prosecutor made it clear that, absent a plea deal, the prosecution would increase the charge to aggravated first degree murder. ECF No. 16 at 2. Petitioner did not enter the plea deal.

Petitioner appealed his conviction to the Washington Court of Appeals which affirmed the conviction and denied reconsideration. ECF Nos. 16 at 3; 17-1 at Exhs. 2, 10. The Washington Supreme Court denied Petitioner's request for review. ECF Nos. 16 at 4; 17-1 at Exh. 13. Petitioner then filed a personal restraint petition in the Washington Court of Appeals asserting, among other things, that his counsel provided ineffective assistance because counsel did not use a Spanish language interpreter when explaining the plea offer. ECF Nos. 16 at 4; 17-1 at Exh. 15 (Ground 2). The Washington Court of Appeals ordered the Superior Court to conduct an evidentiary hearing on this issue. ECF Nos. 16 at 4; 17-1 at Exh. 18. The Superior Court conducted the evidentiary hearing and entered its findings of fact concerning Petitioner's allegations of ineffective assistance of

counsel.  ECF No. 17-1 at Exh. 20.

After the Superior Court held the evidentiary hearing and entered its

findings, the Washington Court of Appeals issued its decision on the issue:

> The reference hearing was held on March 30, 2017.  The court heard testimony from Ms. Hudson, Ms. Ajax, and Mr. Luna Luna. Based upon the testimony and exhibits admitted at the hearing, the court entered 51 findings of fact.  Mr. Luna Luna does not challenge any of the findings.  Thus, all are verities on review.
>
> The court's findings, as closely paraphrased, reflect the following facts.  Attorney Hudson speaks fluent Spanish as her first language and does not utilize a Spanish interpreter unless specifically requested by a defendant.  (Finding of Fact "FF" 2, 3, 4)  Ms. Hudson met with Mr. Luna Luna on August 16, 2010 and explained the July 27, 2010 plea offer to him in Spanish.  He told her he was unwilling to plead to anything where he admitted any intentional act against the victim.  (FF 11, 12, 13)
>
> During pendency of the case, one of Mr. Luna Luna's original attorneys, Sean Sant, was elected Franklin County Prosecutor.  He could no longer represent Mr. Luna Luna, and the case was referred to the Benton County Prosecutor's Office for prosecution.  Ms. Ajax was then appointed as co-counsel in Mr. Sant's stead.  (FF 14, 15)
>
> On March 8, 2011, defense investigator Mario Torres emailed Ms. Hudson, indicating, "Shelley and I met with Luna Luna last week. He was adamant about going to trial."  He said he would not take a deal for 10 or 20 years.  He said, "I am already dead and it makes no difference to me.  No deal will I take."  (FF 16; State's Ex. 1 at 28) Ms. Hudson again met with Mr. Luna Luna on March 10, 2011, and had further discussion with him about aggravating factors and how they come into play.  Ms. Hudson's handwritten notes from that meeting reflect Mr. Luna Luna's statement to her that he did not want to admit the killing was intentional.  (FF 17, 18; State's Ex. 1 at 26) On October 6, 2011, Ms. Hudson met with Mr. Luna Luna and noted in her case file that he had many questions about the plea deal.  He

maintained that the homicide was an accident. (FF 24; State's Ex. 1 at 4)

On December 12, 2011, Ms. Ajax emailed the Benton County prosecutor requesting to set up a negotiations conference. (FF 25; State's Ex. 6) The prosecutor, Andy Miller, stated:

> I anticipate that you may be worried that I will not honor Steve's original offer, given our different approaches to murder cases. I will be honest. If I had charged the case, I would have charged aggravated murder in the first degree and not asked for the death penalty. And I likely would have gone to trial instead of amending to murder 1, which, of course, is consistent with our office trying almost all of our first degree murder cases. However, I will assure you that I will listen with an open mind to a pitch for us to keep Steve's original offer, though it is certainly not anything I would do on one of our cases.

(FF 26; State's Ex. 6) On December 15, Ms. Hudson met with Mr. Luna Luna in jail and documented the meeting in her case file. (FF 27)

On December 19, 2011, Ms. Hudson emailed the prosecutor asking if he would consider dismissing the aggravating factors and allow the defense to argue for a sentence within the standard range. The prosecutor declined the request. (FF 28, 29; State's Ex. 7) In response, Ms. Hudson indicated she would need more time to discuss with Mr. Luna Luna before he officially declines the offer. She asked whether he would be required to agree to the State's sentencing recommendation, or if he could argue for a lower sentence. The prosecutor responded that Mr. Luna Luna would be free to argue for any sentence, as long as he understood the mandatory minimum was 20 years. (FF 30, 31; State's Ex. 7) Ms. Hudson met with Mr. Luna Luna and informed him of this exchange in Spanish. He again told her he would not plead guilty because he did not kill the victim intentionally. (FF 34, 35, 36)

On January 9, 2012, Mr. Luna Luna filed a bar complaint against both Ms. Ajax and Ms. Hudson. He wrote that his attorneys

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 4

were "pressuring him to sign a plea bargain because they said if we take the case to trial they are assuring me we are going to lose." He concluded his bar complaint by asking for assistance as soon as possible because "[a] life sentence is at stake." (FF 37, 38; State's Ex. 9)

On January 12, 2012, Ms. Ajax met with Mr. Luna Luna in the presence of Spanish-speaking interpreter, Sharon Yedidia. Ms. Ajax explained the prosecutor's current offer recommending 420 months and that he risked life by going to trial. She used documents to explain the plea offer and sentence possibility. She advised him to take the offer. She took notes of the meeting and wrote in her case file that, "He wants to go to trial despite life sentence with no possibility of parole." (FF 39, 40, 42, 43; State's Ex. 13) In open court on January 13, 2012, the prosecutor filed the amended information charging aggravated first degree murder. The prosecutor stated that the effect of the amendment is if the defendant is convicted of aggravated murder in the first degree, he will die in prison as opposed to having the possibility of getting out of prison under the original Information. Ms. Ajax stated: "My client was fully advised prior to the filing of the Information. We knew this was going to occur." (FF 44, 45)

Ms. Hudson again met with Mr. Luna Luna on January 26, 2012, and made contemporary notes of the meeting. The notes include: "Discussed consequences of not accepting plea. Period. Life. Defendant clear. Will not plea. Would rather stay in prison all of his life than admit he killed her." (FF 46; State's Ex. 1 at 45)

On February 12, 2012, Ms. Ajax emailed the prosecutor and stated, "Mr. Luna Luna has asked us to convey to you that he would plead to Murder in the First Degree with no aggravators. I am sure you will not entertain this offer, but I have a duty to inform you of this information." (FF 47; State's Ex. 12) Mr. Luna Luna did in fact ask Ms. Ajax to send that email and offer, which was rejected by the State. (FF 48)

The court found that both Ms. Hudson and Ms. Ajax recommended to Mr. Luna Luna that he accept the plea offer and plead guilty to first degree murder, based on the strength of the State's

case and likelihood he would be found guilty at trial. Those recommendations were conveyed in Spanish. (FF 49) Mr. Luna Luna did tell his lawyers what happened was an accident and that is why he did not want to plead guilty to first degree murder. (FF 50) The testimony of Ms. Hudson and Ms. Ajax indicated that they advised Mr. Luna Luna of the plea discussions in Spanish and that he understood them. [Footnote] 4 (FF 51)

[Footnote] 4: At the reference hearing, Mr. Luna Luna testified that his attorneys did communicate with him in Spanish and mentioned to him that a conviction at trial would result in life without possibility of parole. (March 30, 2017 RP 68) But he said he still did not understand exactly what a "life sentence or no life out of prison meant." He said he thought it was a "joke" and decided to take the case to trial because "they were only playing around with him." (RP 69) The superior court did not adopt Mr. Luna Luna's proposed finding of fact 40 that he did not understand that rejecting the State's offer would translate to a life sentence without parole if the jury returned a guilty verdict, or his proposed finding of fact 41 that he would not have taken his case to trial had he known he would be facing this outcome.

Addressing Mr. Luna Luna's ineffective assistance claim in view of the court's reference hearing findings, he has not shown that his attorneys performed deficiently as he alleges. The findings establish that they communicated to him in Spanish the State's plea offer and the consequences of pleading guilty or going to trial. Counsel advised him multiple times that he would face mandatory life in prison if convicted at trial. He understood those consequences and made an informed choice to reject the plea offer, as evidenced by his repeatedly telling counsel he would not admit to intentionally killing the victim and wanted to go to trial despite risking a life sentence with no possibility of parole. And in his bar complaint, he asserted that his attorneys were urging him to accept a plea bargain because if they proceeded to trial he would likely lose. He asked for help because "a life sentence is at stake." (FF 38)

The unchallenged findings establish that counsel actually and substantially assisted Mr. Luna Luna in making an informed decision as to whether to plead guilty or to proceed to trail. He rejected their

advice despite knowing he would likely be convicted at trial based on the strength of the State's evidence and that he faced mandatory life in prison. He fails to meet the first prong of the Strickland test. Thus, the court need not address the prejudice prong.

ECF No. 17-1 at 31-36, Exh. 3.

On July 17, 2018, the Washington Supreme Court denied discretionary review of the Court of Appeals' decision. ECF No. 17-1 at 460-62, Exh. 23. In denying review, the Deputy Commissioner of the Supreme Court observed:

> In light of the factual findings from the reference hearing, Mr. Luna Luna cannot demonstrate ineffective assistance of counsel based on failure to communicate the plea offer. Defense counsel repeatedly explained the plea offer to Mr. Luna Luna in Spanish, and he repeatedly rejected the offer because he insisted he was innocent of first degree murder. This claim does not merit review under RAP 13.4(b).

ECF No. 17-1 at 462.

On February 20, 2019, Petitioner filed a Petition for Writ of Habeas Corpus in the United States District Court for the Western District of Washington. ECF No. 1. Because the petition challenged the conviction from the Franklin County Superior Court, the Western District transferred the case to this Court in the Eastern District of Washington. ECF No. 7. Petitioner raises one ground for relief:

> Defendant was not given adequate representation because assigned [counsel] did not speak fluent Spanish nor was the defendant provided a court appointed, Spanish speaking interpreter, which hindered the

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 7

defendant's ability to comprehend the serious nature of the charged crime for had he known, he would have pled guilty.

ECF Nos. 1 at 5; 11 at 5.  That issue is now before this Court.

## EXHAUSTION OF STATE REMEDIES

Respondent concedes that Mr. Luna Luna properly exhausted his available state court remedies by fairly presenting this claim to the Washington Supreme Court as a federal claim.  ECF No. 16 at 8.

## TIMELINESS OF PETITION

Respondent concedes that Mr. Luna Luna properly filed his federal habeas petition within the statute of limitations.  ECF No. 16 at 8.

## EVIDENTIARY HEARING

"[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)) (evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record).  Indeed, review is limited to the record that was before the state court.  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("[R]eview under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").  Because federal habeas is "a 'guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal," the types of errors redressable under § 2254(d) should be apparent from the record. *Ryan v. Gonzales*, 568 U.S. 57, 75 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Here, Petitioner has not established the limited circumstances for entitlement to an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).

Accordingly, the Court rejects Petitioner's request for an evidentiary hearing at ECF No. 11 at 1.

## DISCUSSION

### I.      Standard of Review

A court will not grant a petition for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner can show that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting § 2254(d)). Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt."

*Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted).

Two separate statutory subsections govern a federal court's review of state court factual findings:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citation omitted); *see also Landrigan*, 550 U.S. at 473-74. Importantly, a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Landrigan*, 550 U.S. at 473.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. at 99. Section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits." *Id*. at 100. "Where a state court's decision is

unaccompanied by an explanation, the habeas petitioner's burden still must be met

by showing there was no reasonable basis for the state court to deny relief." *Id*. at

98.

Under 28 U.S.C. § 2254(d), the Court owes a great level of deference to the

state court adjudication. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). Because

counsel has wide latitude in deciding how best to represent a client, the Court's

review of counsel's representation is also highly deferential. *Id*. Due to these two

layers of deference, the Court's review of the state court's adjudication of a claim

of ineffective assistance of counsel must be "doubly deferential." *Id*.

To show ineffective assistance of counsel, the petitioner must prove

counsel's performance was unreasonably deficient. *Strickland v. Washington*, 466

U.S. 668, 686 (1984). The petitioner must specifically show "counsel made errors

so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Id*. at 687. The Sixth Amendment right to

effective counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566

U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 147-49 (2012). As with

claims of ineffective trial counsel, the Court applies the two-prong *Strickland*

standard to review claims that counsel provided ineffective assistance during the

plea bargaining process. *Lafler*, 566 U.S. at 162-63; *Hill v. Lockhart*, 474 U.S. 52,

58 (1985). To prevail under this standard, the petitioner must rebut the

1 presumption of competence and show that counsel's representation fell below that

2 of a reasonably competent attorney. *Strickland*, 466 U.S. at 689. The petitioner

3 must also establish prejudice by showing "that there is a reasonable probability

4 that, but for counsel's unprofessional errors, the result of the proceeding would

5 have been different." *Id*. at 694. Where the claim involves the rejection of a plea

6 offer, the petitioner must show that, but for the allegedly incompetent

7 representation by defense counsel, he would have accepted the plea offer. *Lafler*,

8 566 U.S. at 163-64.

9 **II.    Analysis**

10    In this proceeding Mr. Luna Luna alleges that he was not given adequate

11 representation because assigned counsel did not speak fluent Spanish, nor was he

12 provided a Spanish speaking interpreter, which hindered his ability to comprehend

13 the serious nature of the charged crime for had he known, he would have pled

14 guilty. *See* ECF No. 11 at 5. In his reply, Mr. Luna Luna complains that his

15 counsel gave him "false hope, while relaying the state's plea offer", counsel kept

16 giving him "false hope at trial, and minimizing the state's case and the weight of

17 evidence in the case." ECF No. 20 at 2. Thus, Mr. Luna Luna contends that there

18 was no legitimate trial strategy by counsel failing to fully inform him on all the

19 facts and evidence and its consequences in his case. *Id*. at 4.

20

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 12

During the underlying State personal restraint petition proceeding, Mr. Luna Luna contended that his attorneys failed to translate a plea offer written in English and the consequence of not accepting the plea offer. ECF No. 17-1 at 207, Exh. 15. He contended that his attorneys failed to inform him that if he turned down the state's offer and proceeded to trial and was convicted of aggravated murder, he would be sentenced to life imprisonment without the possibility of release or parole. *Id.*

Mr. Luna Luna does not show the state court adjudication of his claim was an unreasonable application of clearly established federal law. The Washington Court of Appeals applied the correct constitutional standard, citing, inter alia, *Strickland v. Washington*, 466 U.S. 668 (1984); *Lafler v. Cooper*, 566 U.S. 156 (2012); and *Missouri v. Frye*, 566 U.S. 134 (2012). ECF No. 17-1 at 29, Exh. 3.

Further, in light of the factual findings from the reference hearing which were adopted by the Washington Court of Appeals, Mr. Luna Luna has not demonstrated ineffective assistance of counsel based on the failure to communicate the plea offer. Mr. Luna Luna does not contest these factual findings. Mr. Luna Luna has not shown that his attorneys performed deficiently. The state court findings establish that his attorneys fully communicated to him in Spanish the State's plea offer and the consequences of pleading guilty or going to trial. Counsel advised him multiple times that he would face mandatory life in prison if

convicted at trial.  He understood those consequences and made an informed

choice to reject the plea offer, as evidenced by his repeatedly telling counsel he

would not admit to intentionally killing the victim and wanted to go to trial despite

risking a life sentence with no possibility of parole.  Tellingly, in his bar complaint,

he asserted that his attorneys were urging him to accept a plea bargain because if

they proceeded to trial he would likely lose.  These unchallenged findings establish

that counsel fully assisted Mr. Luna Luna in making an informed decision as to

whether to plead guilty or to proceed to trail.  He rejected their advice despite

knowing he would likely be convicted at trial based on the strength of the State's

evidence and that he faced mandatory life in prison.   He rejected the plea offer not

because of a "false hope" that he would win at trial, but rather because he did not

want to admit the killing was intentional.  He maintained that it was an accident,

and he said he was "already dead and it makes no difference to me.  No deal will I

take."

Mr. Luna Luna has failed to show that these factual determinations should

be overturned because they are objectively unreasonable in light of the evidence

presented in the state court proceeding.  *See Waddington v. Sarausad*, 555 U.S. at

190 (quoting § 2254(d)).

//

//

### III. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. at 327.

This Court concludes that Petitioner is not entitled to a COA because he has not demonstrated that jurists of reason could disagree with this Court's resolution of his constitutional claims or could conclude that any issue presented deserves encouragement to proceed further.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (ECF Nos. 1, 11) is **DENIED**.

2. Any appeal taken by Petitioner of this matter would not be taken in good faith as he fails to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is denied.

1    The District Court Executive is directed to enter this Order and Judgment

2  accordingly, furnish copies to the parties, and **CLOSE** the file.

3      **DATED February 21, 2020**.

4    

5                THOMAS O. RICE
                 Chief United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 16